UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEAN JOASSIN,

                Plaintiff,

v.                              Case No. 3:13-cv-607-J-39MCR

LIEUTENANT MURPHY, et al.,

                Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Jean Joassin, an inmate of the Florida penal system proceeding pro se and in forma pauperis, filed a Civil Rights Complaint Form (Doc. #1) (Complaint) on May 21, 2013 pursuant to 42 U.S.C. § 1983.  Plaintiff names correctional officers at Suwanee Correctional Institute (SCI) Lieutenant Murphy, Sergeant Rogers, Officer Coates, Officer Martens, and Lieutenant Woods,[1] in their individual and official capacities, as the Defendants.  Plaintiff asserts that Defendants violated his Eighth Amendment right to be

_____

[1] The Court recognizes that Plaintiff may have misspelled the names of Defendants or referred to them with different titles, but the Court will refer to each Defendant hereafter by their last name.

free from cruel and unusual punishment when they used unnecessary and excessive force and by failing to intervene to protect him from unnecessary and excessive force. As relief, Plaintiff seeks monetary damages and an order enjoining Defendants from engaging in further violations of Plaintiff's constitutional rights. Subsequently, upon briefing by the parties, this Court granted Defendants' Motion to Dismiss Plaintiff's claim for damages against all Defendants in their official capacities. See Order (Doc. 36).

This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. #52) (Defendants' Motion).[2] Plaintiff was advised of the provisions of Federal Rule of Civil Procedure 56, notified that the granting of a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and given an opportunity to respond. See Summary Judgment Notice (Doc. #53). Plaintiff responded. See Plaintiff's Response to Defendant's [sic] Motion for Summary Judgment (Doc. #68) (Plaintiff's Response).[3] Thus, this case is now ripe for review.

---

[2] The Court will refer to the exhibits appended to Defendants' Motion as "D. Ex."

[3] The Court will refer to the exhibits appended to Plaintiff's Response as "P. Ex."

## II. Plaintiff's Allegations in the Complaint

In his verified Complaint, Plaintiff alleges that, on October 18, 2012,[4] while he was confined at SCI, Defendant Martens removed Plaintiff from his cell and placed extremely tight restraints on Plaintiff that cut his wrists. Complaint at 6. Defendant Martens then placed Plaintiff in the shower, still restrained, for approximately two hours. Id. Defendant Martens then placed Plaintiff in extremely tight full restraints, including shackles, that cut his wrists and ankles and squeezed his abdomen area, and stepped on Plaintiff's shackle, slamming Plaintiff to the floor. Id. Next, Defendants Martens, Coates, and Rogers dragged Plaintiff to the center of the dormitory. Id. Defendant Martens said "this is what we do to wild monkeys nigger," and squeezed Plaintiff's testicles painfully, while Defendant Coates said "lynch mob you stupid ape." Id. at 6-7. Defendant Rogers then spit in Plaintiff's face and put a plastic bag over his face causing him nearly to lose consciousness. Id. at 7.

Defendant Murphy and all named Defendants, as well as other unknown officers, witnessed these actions but failed to intervene or report them. Id. at 6-8. Afterwards, Defendants Martens, Coates, and Woods took Plaintiff to medical, slammed him to the

---

[4] Subsequently, Plaintiff states that the incident occurred on October 17, 2012. See Plaintiff's Affidavit in Opposition of Defendants' Motion for Summary Judgement (Doc. # 35) at 1; D. Ex. B at 2; D. Ex. C at 6.

ground again, and then told the nurse that nothing was wrong.  Id. at 6-7.  As a result of these actions, Plaintiff alleges that he suffered bruises on his wrists, back, ankles, neck, face, and stomach.  Id. at 6-8.  Plaintiff also alleges that he could not walk, had severe chest pains, and endured mental and emotional injuries including psychosis.  Id.  Plaintiff further states that, while the officers used force, they failed to use a camera, as Plaintiff claims they were required to do.  Id. at 6-7.[5]  Two months after filing the Complaint, Plaintiff filed documents labeled a "declaration" (Doc. #9), which consisted of a page from inmate Jackson's declaration, a page from the Complaint, and then a series of inmate sick call requests[6] (Doc. #9-1) completed over a period of months by Plaintiff.

## III.  Summary Judgment Standard

The Eleventh Circuit set forth the summary judgment standard.

> Summary Judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The substantive

---

[5] Plaintiff has attached a declaration by inmate Antwan Jackson.  However, the Court cannot consider this declaration because it is conclusory and not based on personal knowledge, but instead "a full account of these incidents [as] explained to me by [Plaintiff] and the (Anonymous) eye witnesses."  Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005) (per curiam).

[6] These ten requests begin in late October 2012 and continue through March 2013.  They are not authenticated or identified in any way by Plaintiff and appear to reflect Plaintiff's claims of injury.  Many of the requests appear to have been reviewed by medical professionals, but do not seem to indicate any concerns.

law controls which facts are material and which are irrelevant. Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). A pro se plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. See Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed.R.Civ.P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005).

As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment. See Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990) (discounting inmate's claim as a conclusory allegation of serious injury that was unsupported by any physical evidence, medical records, or the corroborating

- 5 -

> testimony of witnesses).   Moreover, "[w]hen
> opposing parties tell two different stories,
> one of which is blatantly contradicted by the
> record, so that no reasonable jury could
> believe it, a court should not adopt that
> version of the facts for purposes of ruling on
> a motion for summary judgment."   <u>Scott v.
> Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 167
> L.Ed.2d 686 (2007).

<u>Howard v. Memnon</u>, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per

curiam) (footnote omitted).   Further, sworn evidence that is

contradictory to the laws of nature cannot support a verdict.

<u>Ralston Purina Co. v. Hobson</u>, 554 F.2d 725, 729 (5th Cir. 1977).[7]

### IV. Defendants' Motion

Defendants contend that they are entitled to summary judgment

because Plaintiff fails to establish an Eighth Amendment violation

for cruel and unusual punishment or deliberate indifference.

Defendants further contend that, while Plaintiff listed "tort" and

referenced the U.N. Convention and Florida Department of

Corrections' (FDOC) administrative rules, Plaintiff fails to state

any tort claim and lacks any valid cause of action otherwise.

Defendants attach exhibits to their Motion including

declarations by each Defendant and other SCI employees, medical

records, Plaintiff's deposition, an incident report, an Inspector

---

[7] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th
Cir. 1981) (en banc), the Eleventh Circuit adopted as binding
precedent all of the decision of the former Fifth Circuit handed
down prior to the close of business on September 30, 1981.

General's investigative report, and a grievance filed by Plaintiff.

In his Declaration, Defendant Coates describes the event:

> On October 17, 2012, I was present for an incident in G Dormitory at [SCI] involving [Plaintiff]. [Plaintiff] was placed in a shower cell while his cell was being cleaned up.  After he came out of the shower cell, he fell to the ground and stated that he could not walk. Officer Martens and I attempted to assist [Plaintiff] to the infirmary, but he stated he was unable to walk.  We obtained a wheelchair, and other officers escorted [Plaintiff] to the infirmary.
>
> During this incident, no one abused or mistreated [Plaintiff] in any way.  No one, including myself, stepped on his leg chains to make him fall.  He simply dropped to the floor stating that he could not walk.  No one hit [Plaintiff] or placed their knees on his back. No one punched him, spit on him, or placed a plastic bag on his head or face.  No one "slammed" him to the ground at any time.
>
> ...  I did not write an incident report regarding this incident because there was no incident other than [Plaintiff] claiming he could not walk.
>
> ...  I have never used inappropriate force on an inmate as described in [Plaintiff's] Complaint.
>
> I did not say the phrase, "lynch mob you stupid ape." ...
>
> Officer Martens did not grab [Plaintiff's] penis or testicles during this incident.

D. Ex. H (paragraph enumeration omitted).

The Declaration of Defendant Martens contains the following similar depiction:

On October 17, 2012, I was present for an
incident in G Dormitory at [SCI] involving
[Plaintiff]. [Plaintiff] was placed in a
shower cell while his cell was being searched.
After he came out of the shower cell, he fell
to the ground and stated that he could not
walk. Officer Coates and I attempted to assist
[Plaintiff] to the infirmary, but he stated he
was unable to walk.  We obtained a wheelchair,
and escorted [Plaintiff] to the infirmary.

During this incident, no one abused or
mistreated [Plaintiff] in any way.  No one,
including myself, stepped on his leg chains to
make him fall.  He simply dropped to the floor
stating that he could not walk.  No one hit
[Plaintiff] or placed their knees on his back.
No one punched him, spit on him, or placed a
plastic bag on his head or face.  No one
"slammed" him to the ground at any time.

... I have never used inappropriate force on
an inmate as described in [Plaintiff's]
Complaint.

I did not say the sentence, "This is what we
do to wild monkeys nigger." ...

I did not grab [Plaintiff's] penis or
testicles during this or any other incident.

D. Ex. I (paragraph enumeration omitted).

The shift supervisor at SCI, Lieutenant Debra Robinson, also

provides a declaration describing the event.

On October 17, 2012, I was present for an
incident in G Dormitory at [SCI] involving
[Plaintiff].  I arrived at G Dormitory after
[Plaintiff] claimed that he could not walk.  I
observed correctional officers place
[Plaintiff] in a wheelchair.  I also observed
the officers wheel him out of G Dormitory.
During the time I was present in G Dormitory,
no one abused or mistreated [Plaintiff] in any
way.  I did not observe what happened with
[Plaintiff] after he left G Dormitory.

- 8 -

D. Ex. F at 1.

The Declaration of Defendant Rogers also describes the incident:

> On October 17, 2012, I was present for an incident in G Dormitory at [SCI] involving [Plaintiff]. [Plaintiff] was placed in a shower cell while his cell was being cleaned up. After he came out of the shower cell, he fell to the ground and stated that he could not walk. Officer Martens and Officer Coates attempted to assist [Plaintiff] to the infirmary, but he stated he was unable to walk.  They obtained a wheelchair, and escorted [Plaintiff] to the infirmary.
>
> During this incident, no one abused or mistreated [Plaintiff] in any way.  No one hit [Plaintiff] or placed their knees on his back. No one punched him, spit on him, or placed a plastic bag on his head or face.  No one "slammed" him to the ground at any time.
>
> If anyone had done any of these things, I would have written this information in my incident report regarding the incident. However, I did not write this in my incident report.
>
> ...  I have never used inappropriate force on an inmate as described in [Plaintiff's] Complaint.
>
> I did not here [sic] anyone say the phrase, "lynch mob you stupid ape" or the sentence[,] "This is what we do to wild monkeys nigger."

D. Ex. J (paragraph enumeration omitted).   D e f e n d a n t s   a l s o provide Defendant Rogers' Incident Report that briefly explains the incident whereby Plaintiff was placed on property restriction after Defendant Rogers observed Plaintiff "with personal and state property on the floor and state issued mattress on the floor

impeding security from performing their essential duties." D. Ex. G. Lieutenant Robinson's comments on the Incident Report also add that, Plaintiff "declared a psychological emergency[8] and was placed in SHOS[9] status.  Upon removal from the shower cell ..., [Plaintiff] suddenly descended to the floor stating he was unable to stand. ... [Plaintiff] was assisted to his feet and attempted to walk but stated he was unable to.  [Plaintiff was] then placed in a wheelchair and escorted to Medical where he was evaluated by on-duty medical staff ... ."  Id.  As a result, Plaintiff received "a disciplinary report for misuse of state property (7-4)."  Id.

The Declaration of Defendant Woods is also offered to support Defendants' Motion, stating:

> On October 17, 2012, there was an incident in G Dormitory at [SCI] involving [Plaintiff]. I do not recall being present at this incident. However, I have never abused or mistreated [Plaintiff] in any way. I did not punch him, spit on him, or place a plastic bag on his head or face in this, or any other, incident. I did not "slam" him to the ground or any other surface at any time.
>
> ... I have never used inappropriate force on an inmate as described in [Plaintiff's] Complaint.

D. Ex. K (paragraph enumeration omitted).

---

[8] It is unclear from the record precisely what is meant by a "psychological" or "psych" emergency, but the terms are used by multiple parties in their descriptions.  It appears that it may have some reference to a mental or emotional breakdown of some kind.

[9] I.e. Self-Harm Observation Status.

Defendant Murphy also provides a Declaration in support:

> On October 17, 2012, I was present for an
> incident in G Dormitory at [SCI] involving
> [Plaintiff]. [Plaintiff] was placed in a
> shower cell while his cell was being cleaned
> up. After he came out of the shower cell, he
> fell to the ground and stated that he could
> not walk. Officer Martens and Officer Coates
> attempted to assist [Plaintiff] to the
> infirmary, but he stated he was unable to
> walk.  They obtained a wheelchair, and
> escorted [Plaintiff] to the infirmary.
>
> During this incident, no one abused or
> mistreated [Plaintiff] in any way.  No one hit
> [Plaintiff] or placed their knees on his back.
> No one punched him, spit on him, or placed a
> plastic bag on his head or face.  No one
> "slammed" him to the ground at any time.
>
> ...  I have never used inappropriate force on
> an inmate as described in [Plaintiff's]
> Complaint.
>
> I did not here [sic] anyone say the phrase,
> "lynch mob you stupid ape" or the sentence[,]
> "This is what we do to wild monkeys nigger."

D. Ex. L (paragraph enumeration omitted).

Defendants also offer the Declaration of Nurse Kim Hancock in
support of their motion.  She attests that she created the attached
Emergency Room Record based on her observations on October 17,
2012, and further states:

> [Plaintiff] did not have any visible physical
> injury or other indications that he had been
> assaulted by anyone on that visit to the
> infirmary.
>
> Even if correctional officers had informed me
> that there was nothing wrong with [Plaintiff],
> I still would have conducted a simple
> examination of the inmates['] complaints,

> which I did in this instance, as shown by the
> details of the medical records.

D. Ex. E at 1-2 (paragraph enumeration omitted).   The attached Emergency Room Record reflects that the examination took place at 8:00 p.m. on October 17, 2012 upon Plaintiff's self-injury and concluded approximately twenty minutes later.[10]  D. Ex. F at 3.   The Emergency Room Record further states that Plaintiff complained of pain in his legs and arms and that he was unable to walk.   Id.   It also reflects that Nurse Hancock examined Plaintiff's arms and legs to find no visible injury and that Plaintiff was able to move all extremities.   Id.   3-7.   The Emergency Room Record further describes the event as a self-injury and states that Plaintiff said, "I want to die."   Id. at 6.   The Emergency Room Record additionally documents that Plaintiff was yelling and screaming during the assessment because he was unable to walk and had arm pain due to the handcuffs.   Id. at 7.

Defendants have also provided the first page of Plaintiff's two-page grievance dated October 26, 2012.   D. Ex. A, Plaintiff's Grievance.   In Plaintiff's Grievance, he directs the Warden to review the video tape and alleges that, upon "declaring a psych emergency," Defendants removed him from his cell, placed him in the shower, then took him from the shower, and slammed him to the floor (apparently in view of a camera).   Id.   Plaintiff then alleges that

---

[10] On the top of the form, the other options are scratched through and it appears that "Im Injury" is written. D. Ex. F at 3.

some of the officers took him outside the view of the camera into the hallway, slammed him again, grabbed his groin, and slammed him a third time.  Id.

Also submitted to the Court is the Declaration and Investigative Report of Inspector Peter Lindboe, who investigated Plaintiff's Grievance on behalf of the Inspector General's Office in FDOC.  In the Declaration, Inspector Lindboe states:

> During my investigation, I interviewed [Plaintiff], and I examined the incident reports and medical records regarding an incident that occurred on October 17, 2012, not on October 18, 2012.
>
> I also reviewed the fixed wing video of the part of the incident where [Plaintiff] claims Officers Coates and Martens took him out of the shower, threw him on the floor, and placed their knees in his back.  The remainder of his allegations allegedly occurred out of camera range, so there was no other video to review.
>
> When I viewed the video, I saw [Plaintiff] throw himself to the floor while the officers were attempting to secure waist restraints. The video did not show the security staff placing their knees on [Plaintiff's] back, or that they abused him in any way, whatsoever.
>
> I did not retain a copy of the video because, at that time, it was the policy of the Inspector General's office not to keep videos for investigative inquiries.  This was an investigative inquiry that was closed, so I did not retain the video.

D. Ex. D at 1-2 (paragraph enumeration omitted).

In addition to the Investigative Report, Defendants provide a transcription of an audio recording from a sworn interview of

Plaintiff conducted on November 9, 2012 by Inspector Lindboe as part of the Inspector General's investigation.   See D. Ex. B, Plaintiff's Interview; D. Ex. D at 3-4, Investigative Report.   In his sworn testimony, Plaintiff claims that the entire incident began because he complained to Defendant Murphy about not having bread or a spoon with his meal and asked to see a supervisor.   D. Ex. B at 3.   Plaintiff claims that Defendant Murphy took him out of his cell and put him in the shower for approximately two hours while he searched Plaintiff's cell for a spoon, even though the officer had the spoon in his pocket.   Id.   Once the supervisor left, Plaintiff alleges that he was slammed to the ground and kneed in the back.   Id.   He then claims that he was dragged to a hallway without cameras, slammed again before being put in a wheelchair, and then slammed one last time before going inside the infirmary. Id. at 3-4.   Only in response to the Inspector's question does Plaintiff respond affirmatively that Defendant Martens squeezed his penis in the dorm hallway and told him to stop resisting.   Id. at 4-5.

In the Investigative Report, Inspector Lindboe summarizes Plaintiff's Grievance, Plaintiff's Interview, and the Emergency Room Record regarding the October 17, 2012 incident.   D. Ex. D at 3-4.   Specifically, Inspector Lindboe states:

> A review of the fixed wing video footage revealed that [Plaintiff] was removed from the shower and staff started putting him in restraints.   As the officer was attempting to

- 14 -

secure the waist and chain, [Plaintiff]
suddenly threw himself to the floor.  Staff
are not seen with their knees in [Plaintiff's]
back as he claimed.  There are no cameras in
the other areas where [Plaintiff] alleged he
was "slammed" the second and third times and
where he alleged he was sexually abused.

It is recommended that this inquiry be closed.
There are no non-subject staff witnesses and
the victim could not provide any witnesses or
evidence to support his allegations.  In the
area with cameras present, the video disproves
the inmate's allegations.  There are no
cameras in the areas where the inmate alleges
he was physically abused the second and thir
times and where he alleges he was sexually
abused.  Medical does not document any injury.

D. Ex. D at 4 (emphasis original).

Finally, Defendants attach Plaintiff's entire deposition taken
November 7, 2014.  D. Ex. C, Plaintiff's Deposition.  In the
deposition, Plaintiff makes similar allegations to those in the
Complaint and Plaintiff's Grievance, with some inconsistencies
regarding the date of the incident, which officers took which
actions, and the precise order of events.  Id.  Plaintiff alters
some material facts as well.  For instance, Plaintiff states that
the incident began because his food tray was completely empty.  Id.
at 7.  He adds that the officers searched his cell and found a bag
of food, which he disputed had been there.  Id. at 7, 15.
Plaintiff also stated that the officers' use of force began in the
dormitory, slamming him onto the ground by stepping on his
restraints, kneeing him in the back, and calling for additional
officers using their body alarm.  Id. at 38.  Plaintiff alleges

further beating before the officers dragged him into the hallway, outside of the view of cameras, to beat him some more and then place him in a wheelchair. <u>See</u> <u>generally</u>, D. Ex. C.

Plaintiff also varies from the allegations in his Complaint. Plaintiff claims that, rather than to asphyxiate, Defendants placed the plastic bag over his face in place of a plastic spit shield until a shield was retrieved and placed over Plaintiff's face. <u>Id</u>. at 38-39. Plaintiff also alleges that, once in the infirmary, the nurse could not see his facial bruising because of the spit shield, but that, somehow, officers still were able to punch him in the face one more time in the infirmary. <u>Id</u>. at 29-34. For the first time, Plaintiff alleges that, due to the beating, he was spitting and throwing up blood. <u>Id</u>. at 42. Also as a result, Plaintiff claimed that he had swelling and bruises on his face, soreness in his arms, legs, and back, and subsequent back spasms, but that there were no broken bones, stitches, or other permanent symptoms a year later, except possible lower back pain. <u>Id</u>. at 38-42.

## V. Plaintiff's Response

Plaintiff provides a verified Response opposing Defendants' Motion. <u>See</u> Plaintiff's Response at 13-14. In his Response, Plaintiff argues that a number of Defendants' exhibits and declarations are faulty in some way. <u>Id</u>. at 5-9. It is unclear whether Plaintiff had any opportunity to view the video of the incident, but Plaintiff speculates that the cameras are directed

such that they only capture video from a person's waist-up making it impossible to see whether Defendants stepped on Plaintiff's leg chain.   Id. a 5-6.   Plaintiff also asks this Court to strike Defendants' evidence, arguing that it is not based on personal knowledge, is irrelevant, or contains hearsay.   Id. at 6-13. Plaintiff attaches to his Response his complete two-page Grievance along with SCI's response that his allegations were forwarded to the Inspector General's office for further disposition.  P. Ex. 1. Plaintiff then attaches nearly all of the exhibits previously attached to Defendants' Motion, including those he requests be stricken.[11]  Cf. P. Exs. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 with D. Exs. B, D, E, F, G, H, I, J, K, L.

## VI. Law and Conclusions

### A.  Eighth Amendment

"The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  In considering an Eighth Amendment excessive force claim, [the Court] must consider both a subjective and objective component: (1) whether the 'officials act[ed] with a sufficiently culpable state of mind,' and

---

[11] As Plaintiff has not provided a proper basis to strike such exhibits and has, himself, put them in the record, this Court will not consider Plaintiff's requests to strike Defendants' evidence. Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.") (quotations omitted).

(2) 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Tate v. Rockford, 497 F. App'x 921, 923 (11th Cir. 2012) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)), cert. denied, 133 S.Ct. 1822 (2013).

> [W]hether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (establishing the standard for an Eighth Amendment excessive force claim)).... If force is used "maliciously and sadistically for the very purpose of causing harm," then it necessarily shocks the conscience. ... If not, then it does not.

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam).

"Although the extent of the injury is a relevant factor in determining the amount of force applied, it is not solely determinative of an Eight Amendment claim." Muhammad v. Sapp, 494 F. App'x 953, 957 (11th Cir. 2012) (per curiam) (citing Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010)).

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. See Whitley, supra, 475 U.S., at 327, 106 S.Ct., at 1088. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how

> diabolic or inhuman, inflicting less than some
> arbitrary quantity of injury.  Such a result
> would have been unacceptable to the drafters
> of the Eighth Amendment as it is today.

Hudson, 503 U.S. at 9.

In determining whether the force was applied maliciously and sadistically to cause harm, courts consider several factors, including:

> the need for the application of force; the
> relationship between the need and the amount
> of force that was used; and the extent of the
> injury inflicted upon the prisoner[;] the
> extent of the threat to the safety of staff
> and inmates, as reasonably perceived by the
> responsible officials on the basis of the
> facts known to them[;] and any efforts made to
> temper the severity of a forceful response.

Cockrell, 510 F.3d at 1311.  The Court must examine the facts as reasonably perceived by Defendants on the basis of the facts known to them at the time.  Id. (citing Whitley, 475 U.S. at 321).  When considering these factors, a wide range of deference must be given to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.  Cockrell, 510 F.3d at 1311 (holding that the breaking of bones did not violate the Eighth Amendment under the circumstances even though the prisoner had not offered any physical resistence) (citing Parker, 898 F.2d at 1533 (permitting use of force even when detainee is not physically resisting)).  The immediate offer of medical assistance shows an effort to temper the severity of the use of force.  Cockrell, 510 F.3d at 1312.

- 19 -

The Court finds that Defendants have met their initial burden of showing, by reference to numerous affidavits, Plaintiff's medical records, investigative and incident reports, and a videotape depicting most of the incident, that there are no genuine issues of material fact that should be decided at trial with respect to Plaintiff's excessive force claims. The parties agree that there was a need to remove Plaintiff from his cell and place him in the shower during a search of his cell, that at some point Plaintiff declared a psychological emergency, and that Defendants then needed to transport Plaintiff to the infirmary.[12] Defendants have presented evidence that there was no actual use of force by any of the Defendants, that Plaintiff declared a psychological emergency and fell to the ground on his own, and that Defendants appropriately placed him in a wheelchair and took him to the infirmary where he was examined and it was confirmed that he had no injuries.

Because Defendants have met this initial burden, Plaintiff is required to present his own documentation to show that there is a genuine issue for trial. Plaintiff has presented no evidence, other than his own conclusory allegations to refute Defendants'

---

[12] In their Answer, Defendants admit Plaintiff's allegations that (1) Plaintiff was removed from his cell and placed in the shower, (2) after the shower, Plaintiff was restrained in full shackles, (3) no use of force camera was used during the event, and (4) Defendants Martens and Coates escorted Plaintiff to medical. See Answer, Defenses, and Demand for Jury Trial (Doc. #32) (Answer).

version of the events.   Moreover, Plaintiff has now provided a description of the event on at least four occasions, all with material distinctions and differences.   See Defendants' Motion, Statement of Facts at 2-5; cf. Plaintiff's Grievance, Plaintiff's Interview, Complaint, and Plaintiff's Deposition.   With each re-telling, Plaintiff seems to find additional allegations previously left out.   Further, while Plaintiff's allegations imply that the incident took place before a number of witnesses, and partially on video, Plaintiff has not provided any such witness affidavits or explanation of why he could not obtain them.   Still, on summary judgment, it is inappropriate to make credibility determinations of competing affidavits.   Moorman v. UnumProvident Corp., 464 F.3d 1260, 1266 n.1 (11th Cir. 2006).

Conversely, this Court cannot credit Plaintiff's sworn allegations to the extent that they lack medical documentation or support, are blatantly contradicted by video evidence, or are contradicted by the laws of nature.   See Parker, 898 F.2d at 1530; Scott, 550 U.S. at 380-81, 127 S.Ct. 1769; Hobson, 554 F.2d at 729. Even affording Plaintiff every inference, Plaintiff's version of events is difficult to follow.   First, Plaintiff has not disputed that the incident began by his removal from his cell for misuse of state property, as determined in the adjudication of a disciplinary

report.[13]   Plaintiff alleges that he had bruising all over his body but has not provided any medical records or affidavits from medical professionals to rebut Defendants' evidence that he had absolutely no injury.   Plaintiff first claims that the videotape will corroborate his version, but, after it is reviewed by Inspector Lindboe, speculates that the camera may not have been angled appropriately to capture the alleged misconduct.   With these discrediting factors, the rest of Plaintiff's allegations become more difficult to accept.   Still, the Court must credit Plaintiff's version of the record evidence where no obviously contradictory evidence is available.   Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam).

The Eleventh Circuit has found that "[s]elf-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (per curiam) (holding prisoner's failure to produce evidence to refute contemporaneous medical records necessitated summary judgment for defendant) (citing Parker, 898 F.2d at 1530); see also Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per

---

[13] Plaintiff cannot seek a ruling that would invalidate the disciplinary adjudication, unless it is first invalidated. Roberts v. Wilson, 259 F. App'x 226, 228 (11th Cir. 2007) (per curiam) (citing Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)).

curiam) (holding that a prisoner plaintiff's claims of a fractured wrist, contradicted by contemporaneously created medical records and plaintiff's own inconsistent statements regarding his injury, did not create a genuine dispute); Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987) (per curiam) (discrediting prisoner's conclusory allegations of injury absent corroboration). Plaintiff has not made any allegation refuting the medical examination except to claim speculatively that the nurse's view of his face may have been obstructed by the spit shield.

Here, a contemporaneous medical examination reflects that, after a twenty minute examination, the nurse determined that Plaintiff did not have any injury.[14]  Instead, the record reflects that Plaintiff exhibited signs of self-injury associated with a possible psychological event, as Plaintiff stated "I want to die" and was yelling and screaming during the assessment that his handcuffs were too tight.  Plaintiff even admits that he had no long-term injuries, had no broken bones, and did not require stitches.  Plaintiff has produced absolutely no other evidence nor did his own conduct suggest that any injuries, other than tight arm

---

[14] Cf. Logan v. Smith, 439 F. App'x 798, 802 (11th Cir. 2011) (per curiam) (finding contemporaneous medical examination insufficient to refute prisoner's injury allegations on summary judgment because it reflected only a momentary and cursory examination, especially where another nurse, prisoner's conduct, and other inmate witnesses all corroborated prisoner's allegations of injury).

restraints,[15] might have been present.  Here, Plaintiff's failure to refute contemporaneous medical records and his inconsistent statements of his injury do not create a genuine dispute, and, thus, the Court cannot credit Plaintiff's allegations of injury.

The lack of a significant injury to Plaintiff supports a finding that any use of force was de minimis and casts serious doubt on the balance of Plaintiff's allegations.  Cockrell, 510 F.3d at 1311; see also Vicks v. Knight, 380 F. App'x 847, 852 (11th Cir. 2010) (per curiam) (finding that in a case where the records did not reflect that the inmate plaintiff suffered any injury, "a reasonable factfinder could not believe that [the plaintiff] suffered any injury, and thus could not reasonably infer that [the defendant] used anything more than a de minimis amount of force against [the plaintiff].") (emphasis original).

While the Investigative Report admits that the videotape does not permit a view of the entire alleged actions, i.e. it does not show the hallway between the housing dormitory and the infirmary, Inspector Lindboe concludes that it is wholly consistent with Defendants' version of events and contradicts much of Plaintiff's

---

[15] This Court finds that the use of tight arm restraints during the search of Plaintiff's cell and his medical examination was not an excessive use of force to control Plaintiff, who admits he was suffering a "psychological event."  See Williams v. Burton, 943 F.2d 1572, 1575-76 (11th Cir. 1991) (per curiam) (approving use of four-point restraints and gag on inmate for more than 28 hours, with brief breaks, after he had caused disturbance until officers were reasonably assured that situation had abated).

allegations.[16]  Defendants' evidence reflects that the only force
applied was the amount necessary to restrain Plaintiff and to
transport him to the medical department in a wheelchair.  As noted
by the United States Supreme Court, "[w]hen opposing parties tell
two different stories, one of which is blatantly contradicted by
the record, so that no reasonable jury could believe it, a court
should not adopt that version of the facts for purposes of ruling
on a motion for summary judgment.  Scott, 550 U.S. at 380.

Here, the opposing parties are telling two different stories,
"one of which is blatantly contradicted by the record, so that no
reasonable jury could believe it."  Id.  If this case were to

---

[16] The videotape was reviewed and summarized by Inspector
Lindboe in 2012 as part of his investigation.  When the
investigation concluded, pursuant to the Attorney General's
retention policy, the videotape was not saved as it was no longer
needed.  Thus, it is not presently before the Court.  While the
Attorney General's office may want to reconsider its retention
policies in light of situations like this, the Court can consider
Inspector Lindboe's summary of the videotape to prove the actual
actions, rather than the content of the tapes, because the content
of the recording itself is not a relevant factual issue and because
a sufficient explanation concerning unavailability was provided.
United States v. Howard, 953 F.2d 610, 612 (11th Cir. 1992) (per
curiam) (allowing officer testimony summarizing recordings since
the testimony was offered to prove the content of conversations
rather than the content of the tapes); United States v. McKenzie,
505 F. App'x 843, 846 (11th Cir. 2013) (per curiam) (same); cf.
Buruca v. District of Columbia, 902 F. Supp. 2d 75, 82-83 (D.D.C.
2012) (declining to consider affidavit describing video recordings,
stating, "[b]ecause the plaintiff does not allege that the video
footage is unavailable, the plaintiff may prove the videos' content
only by submitting the actual recordings.  Her characterization of
these videos' contents is therefore inadmissible.") (citations
omitted).  Further, even without considering the videotape, the
outcome would be the same.

proceed to trial, Plaintiff would have only the testimony of himself to support his version of the events. However, his testimony is directly contradicted by all of the other evidence before the Court.[17] All the record evidence, including Inspector Lindboe's summary of the videotape, blatantly contradicts Plaintiff's allegations that he was slammed to the ground, dragged to the hallway, that the officers used their body alarm to call additional officers to come beat him, or that certain officers used racial slurs to taunt or threaten Plaintiff. Plaintiff also admits that Defendants did not initiate any altercation, which otherwise could support a finding of malicious and sadistic use of force, but that instead it began with a routine search of his cell and Plaintiff's declaration of psychological emergency.[18] Thus, in

---

[17] In Plaintiff's Grievance, Plaintiff argues that the videotapes of the incident would support his version of the events. However, in Plaintiff's Response, apparently realizing that the videotape did not corroborate his version, Plaintiff instead speculates that the videotape may not have been positioned to capture the Plaintiff's lower body. See Plaintiff's Response at 5-6. However, as previously noted by Inspector Lindboe, the pertinent videotape clearly depicts the majority of the alleged incident that occurred in Plaintiff's housing dorm and contradicts Plaintiff's excessive force claim. Further, Plaintiff's allegations regarding the videotape do not appear to be made on personal knowledge and therefore cannot be considered. Ellis, 432 F.3d at 1326.

[18] Cf. Mathis v. Adams, 577 F. App'x 966, 968-69 (11th Cir. 2014) (per curiam) (reversing summary judgment because video evidence could not directly establish whether prisoner or corrections officer struck first and only made it less likely that officer struck first and thus, did not utterly discredit prisoner's allegations).

addition to a lack of injury, the Court cannot credit Plaintiff's allegations because they are blatantly contradicted by the record.

The fact that Plaintiff claims that, without provocation, he was beaten for such an extended period while fully restrained and unable to protect himself but did not receive even a scratch, much less any permanent injury, makes it unrealistic to believe that Defendants used any more than a de minimis amount of force.[19] Because these allegations contradict the laws of nature, Plaintiff's allegations of severe unfettered beating are not considered evidence that a reasonable jury could consider. See Hobson, 554 F.2d at 728-29 ("[C]ompletely self-serving testimony, unsupported by other evidence and in the teeth of universal experience, will not support a jury verdict. ... Evidence manifestly at variance with the laws of nature and the physical facts is of no probative value and may not support a jury verdict."); see also Reid v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 848, 851-52 (11th Cir. 2012) (per curiam) (affirming partial summary judgment because Plaintiff's allegations were so far-fetched that they contradicted the laws of nature).

Thus, as there was no more than a de minimis use of force or injury, this Court concludes that no reasonable jury could find

---

[19] See Tate, 497 F. App'x at 924 (finding that, even where officers' beating of inmate while in handcuffs and after he ceased resisting and their supervisor continuously yelled for the officers to stop, force was not excessive).

that the Defendants used excessive force.  Because a jury could not

find that Defendants beat Plaintiff, a jury also could not have

find that any of the Defendants knowingly failed to intervene on

Plaintiff's behalf.   While some excessive force cases present

conflicting testimony sufficient to defeat summary judgment, here,

Plaintiff's mere verified pleadings in the face of testimony of all

relevant correction officers and medical personnel, corroborating

medical   records,   an   Inspector   General's   Report,   pertinent

videotapes,  and  the  adjudication  of  a  disciplinary  report  is

precisely the type of case appropriate for summary judgment under

Scott, Hobson, Ellis, and Parker.  See also Kesinger v. Herrington,

381 F.3d 1243, 1247 (11th Cir. 2004) ("a mere scintilla of evidence

in support of the nonmoving party's position is insufficient to

defeat  a  motion  for  summary  judgment.").    Therefore,  after

examination of the relevant factors and the record as a whole, the

Court finds that Defendants' Motion shall be granted with respect

to Plaintiff's excessive force claims.

## B.  Noncognizable Claims

Plaintiff also purports to bring claims under an unidentified

"tort" theory, "Article 1 of the U.N. Convention, International

Conventions Articles 10/2," Fla. Admin. Code r.33-208.002, Rules of

Conduct, and Fla. Admin. Code r.33-602.210, Use of Force.  As noted

by Defendants, Plaintiff has not stated any such claims.  Further,

none of these provisions create a civil cause of action that

Plaintiff is able to raise in this Court.  Therefore, Defendants'

Motion will be granted as to these claims as well.

Therefore, it is now

**ORDERED:**

1.    Defendants' Motion for Summary Judgment (Doc. #52) is

**GRANTED**.

2.    The **Clerk** shall enter judgment in favor of Defendants

Herman Murphy, James Rogers, John Coates, Paul Martens, and Randle

Woods.

3.    The **Clerk** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of

June, 2015.

_____
         BRIAN J. DAVIS
     United States District Judge

tc 6/24
c:
Jean Joassin
Counsel of Record

- 29 -